UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KATHY COON, | § § § § | |
| Plaintiff | § § | CIVIL ACTION NO. |
| v. | § § | |
| | § | **COMPLAINT** |
| CORELOGIC INC., a corporation, and FNC, INC., a corporation, | § § § | |
| | § | JURY DEMAND |
| | § § | |
| Defendants. | § | |

PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff KATHY COON ("Plaintiff"), by and through her attorney, Gordon R. Cooper, II, files her original complaint against CORELOGIC, INC. ("CORELOGIC"), and FNC, INC. ("FNC") collectively, ("Defendants"), Plaintiff alleges upon information and belief, the following:

## I.

## NATURE OF CASE

1.      This is a civil action based upon Defendants' violations of one or more of Plaintiff's rights guaranteed by: (i) Title VII of the Civil Rights Act of 1964 ("Civil Rights Act"), as amended, 42 U.S.C. § 2000e et seq; (ii) The Age Discrimination in Employment Act of 1967, ("ADEA") as amended, 29 U.S.C. § 621 et. seq.; (iii) breach of contract under Texas Common

Law; (iv) breach of the covenant of good faith and fair dealing; and(v) any other cause(s) of action that can be inferred from the facts set forth herein.

2.      Plaintiffis a White American Female and in this lawsuit she seeks equitable relief and monetary damages as redress for Defendants' discriminatory and unlawful employment practices on the basis of her gender and age in violation of Plaintiff's rights, as well as retaliation under the above referenced laws protecting the rights of employees in the workplace, breach of the covenant of good faith and fair dealing and breach of contract and other causes of action as set forth herein.

## II.

## JURISDICTION AND VENUE

3.      The jurisdiction of this Court is proper pursuant to 28 U.S.C. § 1331, as this action involves a question of federal law arising under 42 U.S.C. sections§ 2000e et seq. as well as 29 U.S.C. § 621 et seq.

4.      This Court has supplemental jurisdiction over all state law claims stated herein pursuant to 28 U.S.C. § 1367(a), which confers supplemental jurisdiction over all non-federal claims arising from a common nucleus of operative facts such that they form part of the same case or controversy under Article III of the United States Constitution.

5.      This Court also has jurisdiction pursuant to 28 U.S.C. § 1332 in that the Plaintiff is a resident and citizen of the State of Texas and CORELOGIC, is, upon information and belief, is a corporation organized and formed in the State of California, and FNC, is, upon information and belief, is a corporation organized and formed in the State of Mississippi, and this controversy, exclusive of interests and costs, exceeds $75,000.

2

6.     Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(ii), as all acts

comprising the claims for relief occurred within this judicial district, and pursuant to 28 U.S.C. §

1391(b)(i), as the Plaintiff resides within this judicial district and a substantial part of the alleged

unlawful employment practices have been committed within Jurisdiction of the United States

District Court for the Southern District of Texas.

SERVICE OF PROCESS

CORELOGIC, INC. ("CORELOGIC"), and FNC, INC. ("FNC")collectively, ("Defendants")

may be served with processes follows:

> 1.  CORELOGIC, INC. ("CORELOGIC" )
> 40 Pacifica
> Suite 900
> Irving, California, 92618
>
> 2.  FNC, INC. ("FNC")
> 1214 Office Park Drive
> Oxford, Mississippi 38655

**III.**

**ADMINISTRATIVE PROCEDURE**

7.     On November 30, 2017, Plaintiff submitted a charge of discrimination to the

Equal Employment Opportunity Commission ("EEOC"), charge number 460-2018-00979

against Defendants FNC, Inc and CORELOGIC, Inc., requesting that the EEOC

investigate her claims based upon sex and age discrimination, as well as retaliation,

3

with regard to her claims:

8.      The EEOC charge was dually filed with EEOC and the Texas Workforce Commission

Civil Rights Division on the same date.

9.      The Complaint with the EEOC was timely filed as it was brought within the 300-day

requirement.

10.     All conditions precedent have been fulfilled and the EEOC issued a Notice of Right to

Sue on or about April 18 th[th], 2018 or shortly thereafter.

## IV.

## JURY DEMAND

11.     Plaintiff respectfully demands a trial by jury on each count of this complaint pursuant to

Fed. R. Civ. P. 38(b).

## V

## PARTIES

12.     At all relevant times herein, Plaintiff Kathy Coon was and is a resident of the Southern

District of Texas. Ms. Coon is a Whie American born female and an employee entitled to

protection as defined in the Title VII of the Civil Rights Act at 42. U.S.C. §2000e et seq. Coon is

over the age of 40 and is entitled to the protection of The Age Discrimination in Employment

Act of 1967, ("ADEA") as amended, 29 U.S.C. § 621 et. seq.

13.     At all relevant times herein, Defendant CORELOGIC, upon information and belief, was organized in the State of California and maintains a principal place of business 40 Pacifica, Ste. 900, Irvine, California, has more than 15 employees, (in excess of 500) and was Plaintiff's employer on the date of the alleged unlawful conduct.

14.     At all relevant times herein, Defendant FNC upon information and belief, was organized in the State of Mississippi and maintains a principal place of business at 1214 Office Park Drive, Oxford, Mississippi and upon information and belief, as of April 2016, is a wholly owned subsidiary of Defendant CORELOGIC.  FNC has in excess of 15 employees (approximately 200) and was Plaintiff's employer on the date of the alleged unlawful conduct.

15.     At all relevant times herein, Defendant CORELOGIC and FNC have been employers engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42. U.S.C. §§ 2000e (b)(g) and (h).

## VI.

## FACTUAL ALLEGATIONS

16.     On or about March 1, 1999, Plaintiff, a female employee over the age of 40, began working for FNC initially employed in sales, and then subsequently she earned the title Chief Appraiser/Director of Appraisal Quality Control.

17.     At all times relevant to the allegations herein, and during the term of her employment, Plaintiff was a home-based employee working from her home in Texas.

18.     At no time during her employment, throughout the date of her termination did Plaintiff perform an appraiser function, despite her title.

19.     While an employee of FNC, Plaintiff was the lead Subject Matter Expert who developed an automated appraisal review system known as the Generally Accepted Appraisal Rules (GAAR).

20.     On or about August 14, 2012, FNC received a patent,based on the GAAR program, and Plaintiff was listed as one of the inventors.

21.     On or about April 1, 2016, FNC was purchased by Defendant CORELOGIC, and upon information and belief FNC is now a wholly-owned subsidiary of CORELOGIC.

22.     Upon information and belief, CORELOGIC, as the Parent organization of FNC although a separate legal entity than FNC, remains actively involved in the management of FNC.

23.     Upon information and believe the GAAR system was one of the primary reasons CORELOGIC acquired FNC.

24.     Once CORELOGIC purchased FNC, Shawn Telford ("Telford") became Plaintiff's manager.

25.     Telford was an employee of FNC prior to its acquisition of CORELOGIC and was one of FNC employees assigned to assist in the due diligence related to the sale. Shortly after the acquisition, upon information and belief, Telford remained employed by Defendant FNC and was assigned to be Plaintiff's manager.  Telford had never served as Plaintiff's Manager prior to FNC being purchased by CoreLogic. Shortly after becoming Plaintiff's manager, without reason or explanation, Telford began gradually reducing the scope of Plaintiff's responsibilities and also reduced Plaintiff's compensation without her consent.

When Plaintiff complained to Telford about the reduction of the scope of her work and her salary, Telford retaliated by further isolating the Plaintiff from the rest of the company.  Despite

being a Senior Director at FNC and the lead creator of GAAR, an automated appraisal review system now owned by CORELOGIC, the new management team had never met, interviewed, or even contacted Plaintiff by phone, despite her extensive knowledge of GAAR. Plaintiff failed to receive invites to: Business strategy and planning sessions related to GAAR, discuss system operations related to GAAR, provide GAAR training (internal and external), assist sales team with prospects and customers, accompany sales team to present GAAR to prospects, contribute to CoreLogic regarding areas of expertise including risk analysis for maintaining existing clients, or to represent CoreLogic as a speaker at industry conferences.

26.     Prior to the purchase of FNC by CORELOGIC, Ms. Coon, the Plaintiff, was known within FNC as well as withinthe industry, including FNC's clients, as the expert on GAAR. Ms. Coon was regularly invited to speak at industry conferences, addressed client's needs regarding appraisal related issues, gave training and presentations with regard to GAAR (which were commission earning opportunities), and was the employee most often relied upon by FNC to handle  customers who did not understand, or were having issues with their system.

After complaining to Telford, he eliminated altogether,Plaintiff's trainings and presentations, all of her on-site trips to clients and her quarterly one-week trips to the home office in Oxford, Mississippi.   Telford precluded Plaintiff from attending the MBA Conference in 2017, the first time she had not been to the conference in 18 years.  Telford even failed to pass along or inform her of an opportunity to be on the Appraisal Standards Board; instead, Telford applied for the seat himself, despite his inferior experience.  Plaintiff was initially invited by Telford to be involved with an appraisal school, Columbia Institute, which was a recent acquisitionby CoreLogic. Later, when Plaintiff followed up regarding her duties for Columbia Institute, Telford told her they didn't get the funding to continue with the project; however, Plaintiff has

good reason to believe and does believe that this was untrue as CoreLogic was actively advertising Columbia Institute.

Telford took away any and all opportunities for Plaintiff to earn commissions or to be visible

or to allow senior management the opportunity to understand and evaluate her skill set.  As of the date of her termination, the only responsibility Telford would allow Plaintiff to work on was rewriting the GAAR Compliance Manual.

27.     Telford is a male employee of Defendant(s).  Upon information and belief, his experience and knowledge with regard to the appraisal process and GAAR were significantly inferior to that of his female subordinate, Ms. Coon.   From the first instance of assuming managerial responsibility for her, Telford treated her poorly and isolated her. Upon information and belief, other female employees had complained in the past to FNC about Telford's treatment of female staff, and upon information and belief, at least one female employee had requested to report to someone else; as a result, the request was granted.

28.     On the same date that Plaintiff was told by Telford that she was being laid off, he announced to the rest of the group that he was too busy to continue as manager, Telford did not post this management position or solicit applications; instead, he had already appointed a male employee for the position despite there being at least one other qualified and interested female employee.

29.     Plaintiff would show that she had both an implied and written contract as it related to the compensation terms of her employment.  Since June 2008, until the date of FNC's acquisition, Plaintiff had been earning in excess of $200,000 annually; $150,000 base, plus a guaranteed minimum of $50,000 annually. This contract was evident in historical payroll records, as well as

memorialized in email correspondence between Plaintiff and her prior manager, CEO Bill Rayburn and the FNC head of Human Resources, Bill Caldwell.  Repeatedly throughout her tenure with FNC, Plaintiff also signed receipt of the Employee Handbook when updated, and Confidentiality and Non-Compete Agreements.

30.     As soon as Plaintiff saw the reduction in her pay in either late April or early May 2016, Ms. Coon complained to Telford about the amount and he said he would follow up with CORELOGIC.   After a short time, hearing nothing, Plaintiff approached Telford again, and this time he responded, saying there was no documentation in Plaintiff's employee file to support the compensation she claimed, and that CoreLogic had to have proof of this compensation before they would pay her.Telford also stated this seemed to be something "cooked up between Bill Rayburn and you",which was condescending to Plaintiff while impugning her character and integrity.

31.      Telford further stated, "if that were true you'd be one of the highest paid employees".  It was clear to Plaintiff from Telford's tone that he was quite agitated that she was making more money than he was. In fact, it would mean that Plaintiff, a female, was earning more than her male supervisor. Because of the tone of Telford's response, Plaintiff asked him if CoreLogic was going to refuse to pay her established compensation; she also asked if she should be looking for another job. Telford responded "no" to both questions, stating that they just needed the documentation for her compensation.

32.     At some point in late 2016, getting nowhere with Telford, Plaintiff also reached out to the Bethany Cooper, HR Manager. Plaintiff asked Ms. Cooper if she could please check her employee file, again, for documentation regarding her pay. Ms. Cooper claimed to have no

knowledge of the situation and stated that all employee files had been sent to the CoreLogic home office in California, therefore she would not be able to check Plaintiff's file.

33.     In December 2016, Plaintiff still had not received her pay, and she inquired again of Telford.  Telford responded with the same excuse, stating there was no documentation to support the amount she claimed. Plaintiff offered to get a signed affidavit from Bill Rayburn attesting to the contractually agreed upon amount, however Telford quickly said "no" and said he would take care of it. It was obvious to Plaintiff that Telford did not want her contacting Bill Rayburn.

34.     Early in 2017, Plaintiff did receive some back pay, but back pay only (no interest, no accompanying 401K adjustment) for the 2016 lost wages; however, Plaintiff did not receive the correct pay for 2017.

35.     Shortly after receiving some of her back-pay wages, on February 16, 2017, Plaintiff was notified by Telford, via telephone call, that she was being laid off or terminated, stating that her position had been eliminated and that effective March1, 2017, she would nolonger have a job.

36.     Ms. Coon did obtain her personnel file and contrary to the repeated assertions of Telford and CORELOGIC/FNC, her personnel file not only included the email correspondence between her and the Company's CEO, Bill Rayburn, but also several documents verifying her compensation.

37.     Upon information and belief, in the six (6) months preceding Plaintiff's termination, several other employees over the age of 40 were let go.  In particular, upon information and belief, CORELOGIC announced a new policy that all home-based employees such as Plaintiff would be required to relocate to an office or quit.  The vast majority of home-based employees where over the age of 40 years old.

38.     In the notification of termination, Plaintiff also received a separation agreement and release, dated March 3, 2017.

39.     Plaintiff is over the age of 40.  The Older Workers Benefit Protections Act ("OWBPA") of the ADEA is applicable.  The separation and release agreement seeking Plaintiff's waiver of certain rights did not specifically reference as required that Plaintiff was not waiving any rights that may arise after the waiver is executed.  Despite there being other employees over the age of 40 terminated by the Defendants in the 6 months preceding Plaintiff's termination, the waiver does not contain the requisite 45 days to consider the agreement nor does it contain the required details of the decisional group.

40.     Despite being informed, and Plaintiff alleges pretextually, that Plaintiff's termination was as a result of a "reorganization" or "reduction in force" (depending on who you spoke to), or a redundant appraiser positions (and Plaintiff did not perform the function of an appraiser), shortly after her termination, Defendants were advertising for the same position it was alleging to be eliminating; Professional Appraiser.

## VII.

### CAUSES OF ACTION

### COUNT ONE:

Sex based Discrimination in Violation of Title VII of the 1964 Civil Rights Act as Amended.

41.     Plaintiff repeats, reiterates and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

42.     42 U.S.C. § 2000e et seq. prohibits discrimination in the terms, conditions and privileges of employment on the basis of an individual's sex and gender and precudes her sex as a motivating factor in any adverse employment decision.

43.     Defendants, as described above, intentionally discriminated against Plaintiff Coon in violation of the 42 U.S.C. § 2000e, et seq, by reducing her pay, ensuring she made less than her male supervisor, by removing all normal duties from her responsibility without explanation or legitimate reasons and by ultimately terminating her.

44.     As a direct and proximate result of Defendants' intentional discriminatory conduct in violation of 42 U.S.C. § 2000e, Plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of back pay, future income, compensation and benefits for which she is entitled to an award of monetary damages and other relief.

45.     As a direct and proximate result of Defendants' intentional discriminatory conduct Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, loss of sleep, loss of enjoyment of life, stress and anxiety, shame and embarrassment, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages and such other relief as the Court deems just.

## COUNT TWO:

### Age Discrimination in Violation of the ADEA

46.     Plaintiff repeat, reiterates and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

47.     29 U.S.C. §621 et. seq., prohibits an employer from discriminating against an employee over the age of 40.

48.     Defendants, as described above, discriminated against Plaintiff on the basis of her age in that the impact of a policy in which home-based employees were forced to resign, the overwhelming majority of whom were over the age of 40, subjected the Plaintiff to unfair and unlawful treatment; her duties reduced, her contractual pay cut, and ultimately, her job termination.

49.     As a direct and proximate result of Defendants'willful discriminatory conduct in violation of the ADEA, Plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of back pay, future income, compensation and benefits for which she is entitled to an award of monetary damages and other relief.

50.     As a direct and proximate result of Defendants' discriminatory conduct in willful violation of the of the ADEA, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages such as liquidated damages and any other award the Court deems appropriate.

## COUNT THREE

### Retaliation in Violation of Title VII of the Civil Rights Act and In Violation of the ADEA

51.     Plaintiff repeats, reiterates and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

52.     Both Title VII and the ADEA prohibitretaliation in the terms, conditions and privileges of employment as a result of an employee's complaints regarding discriminatory treatment in violation of the Acts.

53.     Defendants, as described above, retaliated against Plaintiff in violation of Title VII and the ADEA by the conduct set forth herein, reducing her pay, reducing her responsibilities and by ultimately terminating her employment.

54.     As a direct and proximate result of Defendants "intentional retaliatory acts"Plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, back wages, loss of future income, compensation and benefits for which she is entitled to an award of monetary damages and other relief.

55.     As a direct and proximate result of Defendants' willful, intentional retaliatory conduct in violation of the ADEA and TITLE VII, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, loss of enjoyment of life, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages and other relief as the Court deems appropriate.

## COUNT FOUR:

### Failure to Follow the Requirements for a Satisfactory Waiver of Rights in Violation of the OWBPA of the ADEA

56.     Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

57.     29. U.S.C. § 621 et. seq. requires, among other things, in obtaining a waiver of claims or

rights from an employee under the Act, the employer is required to provide certain information

in the release/waiver.

58.     Defendants' provided a release/waiver to the Plaintiff but failed to provide a specific

statement with regard to the lack of waiver of future claims, failed to provide the requisite 45 day

waiting period when a group of employees over the age of 40 are terminated and failed to

provide the details required under the Act as it relates to the decisional group.

59.     This practice was willful and in violation of the OWBPA 29 U.S.C. § 626

60.     Based on this violation, Defendants are liable in an amount to be determined at trial, plus

costs and attorneys' fees.

## COUNT FIVE:

### Breach of Contract

61.     Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with

the same force and effect as if more fully set forth herein.

62.     Plaintiff entered into a contract with the Defendants' predecessor company, Defendant

FNC, for which upon information and belief, CORELOGIC, on the acquisition of FNC, agreed

to assume all of its legal obligations, contractual and otherwise.

15

63.     Plaintiff had eight (8) years of documented salary and commissions, including payroll records, as well as written correspondence in the form of email communications between she, FNC's CEO and the head of Human Resources.

64.     Plaintiff was contractually entitled to the compensation she agreed upon with her employer, and the Defendants, unilaterally, without Plaintiff's consent, reduced the Plaintiff's compensation and stripped her of her normal day to day duties assigned to her title.

65.     Specifically, Plaintiff was never paid the correct amount of salary and it was not until 2017, that she was given a check for some back wages (2016 wages) in an attempt to satisfy the breach.  Plaintiff's 2017 wages did not represent the correct wages and despite having been paid some back wages, Plaintiff was never made whole as interest on the back wage was not paid nor was there an adjustment to her 401K.

66.     This practice was and is willful and in violation of Texas common law.

67.     By reason of the foregoing, the Defendants are liable to Plaintiff in an amount to be determined at trial in order to make Plaintiff whole, plus costs and attorneys' fees.


## COUNT SIX

### Breach of the Covenant of Good Faith and Fair Dealing

68.     Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

69.     In every contract, express or implied, there exists a covenant of good faith and fair dealing.  Plaintiff as set forth above, had an express contract with regard to her compensation terms and job duties.  At minimum, there existed an implied contract.  Defendants' breached the

covenant with Plaintiff; nothing about Defendants' dealings with Plaintiff demonstrated good faith or fair dealing.

70.     Defendants' unilaterally changed the express contractual terms and conditions of Plaintiff's employment.  She had specific compensation terms that were not only written but evidenced by eight (8) years of course of dealing.  She had a job function and duties assigned to her job title (for 17 years) and as set forth in her job description, those duties, as fully set forth herein, were systematically, and discriminatorily removed from her.  Further, Defendants'imposed restrictions which have made it virtually impossible for Plaintiff to secure a comparable  job.

71.     By reason of the foregoing, the Defendants are liable to the Plaintiff in an amount to be determined at trial, plus costs and attorneys' fees.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully demands judgment and requests the following relief:

a.     Preliminary and permanent injunctions against the Defendants and their officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

b.     Order Defendants to institute and carry out policies, practices, and programs which provide equal employment opportunities for all employee regardless of gender or age and which eradicates the effects of its past unlawful employment practices;

17

c.      Damages which the Plaintiff has sustained as a result of the Defendants' conduct, including all unpaid wages and any short fall between wages paid and those due under the law, back pay, reinstatement or front pay, general and special damages for lost compensation and employee benefits that he would have received but for the Defendants' conduct, for out-of-pocket losses that Plaintiff has incurred due to the Defendants' conduct;

d.      An award for all non-monetary and/or compensatory damages, including but not limited to, compensation for severe mental anguish and emotional distress, humiliation, depression, embarrassment, stress and anxiety, loss of sleep, loss of enjoyment of life, loss of self-esteem, self-confidence and personal dignity, and emotional pain and suffering and any other physical or mental injuries;

e.      An award of damages in an amount to be determined at trial to compensate Plaintiff for harm to her professional and personal reputations and loss of career fulfillment or reinstate Plaintiff to her former position.

f.      Punitive damages to the extent authorized by law in an amount commensurate with Defendants' ability and so as to deter future unlawful conduct;

g.      Issuing a judgment declaring that Defendants willfully violated the OWBPA in  failing to provide the requisite components of a Waiver of Rights under the ADEA;

h.      Issuing a judgment declaring that Defendants willfully retaliated against Plaintiff for complaining about the reduction in her compensation and duties;

i.      Awarding liquidated damages to Plaintiffs in an appropriate and just amount for willful discrimination under the ADEA;

j.      Awarding reasonable attorneys' fees and costs incurred by Plaintiff in filing this action;

18

k.      Awarding pre- and post-judgment interest to Plaintiff on these damages; and

l.      Such further relief as this Court deems appropriate in law or at equity.

> Respectfully submitted,
> Attorneys for Plaintiff
> Cooper & Cooper
> /S/ Gordon R. Cooper, II
> Gordon R. Cooper, II.
> Gordon@gordonrcooperii.com
> 3620 South Macgregor Way
> Houston, Texas 77021